IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LUCE, | ) | CASE NO. 1:20-CV-00567-CEF |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHARLES ESQUE FLEMING |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN LYNEAL WAINWRIGHT, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Christopher Luce ("Luce" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Luce is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Luce*, Ashland County Court of Common Pleas Case No. 17-CR1-025.  For the following reasons, the undersigned recommends that the Petition be DISMISSED.

### I.    Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Luce's conviction as follows:

1

{¶ 2} On March 9, 2017, the Ashland County Grand Jury indicted Appellant on one count of involuntary manslaughter, in violation of R.C. 2903.04(A), a felony of the first degree; one count of corrupting another with drugs, in violation of R.C. 2925.02(A)(3), a felony of the second degree; two counts of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1) and (2), felonies of the fifth degree; two counts of aggravated possession of drugs, in violation of R.C. 2925.11(A), felonies of the fifth degree; two counts of possessing drug abuse instruments, in violation of R.C. 2925.12(A), misdemeanors of the second degree; one count of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree; one count of illegal use or possession of marijuana drug paraphernalia, in violation of R.C. 2925.141(C), a minor misdemeanor; and one count of possession of drugs, in violation of R.C. 2925.11(A), a misdemeanor of the first degree.

{¶ 3} Appellant appeared before the trial court for arraignment on March 14, 2017, and entered a plea of not guilty to the Indictment. Prior to trial, Appellant filed a motion to sever the charges in the Indictment, which the trial court denied via judgment entry filed July 24, 2017. Appellant also filed a motion in limine, seeking to exclude at trial evidence of any confessions made by his co-defendant, Danielle Luce, pursuant to *Bruton v. U.S.*, 391 U.S. 123 (1968).

{¶ 4} On August 1, 2017, Appellant appeared before the trial court, withdrew his former plea of not guilty on Counts 9 (aggravated possession of drugs), 10 (possessing drug abuse instruments), and 11 (possession of drugs), and entered a plea of guilty to those charges. Following a Crim. R. 11 colloquy with Appellant, the trial court determined Appellant was knowingly, intelligently and voluntarily entering the plea, accepted such, and found him guilty of Counts 9, 10, and 11. The trial court did not rule on the motion in limine prior to trial.

{¶ 5} The matter proceeded to trial on the remaining eight counts on August 1, 2017. Appellant and Danielle were tried together.

{¶ 6} Officers John Simmons and Brian Kunzen of the Ashland Police Department were dispatched to 1311 Cleveland Avenue, Lot # 9, on August 8, 2016. Upon his arrival at the scene, Officer Kunzen encountered a woman by the name of Harlina Bell, who told them Appellant had overdosed on heroin. Thereafter, the officers approached the trailer and encountered a female, who was later identified as Appellant's wife, Danielle Luce. Officer Simmons testified Danielle "appeared that she had difficulty comprehending and seemed like she was under the influence of a substance and wasn't comprehending

2

anything, and she was unsteady on her feet." Tr. Jury Trial, Day 1, Aug. 1, 2017, at 178. The officers proceeded to a back bedroom where they discovered Appellant, who was unresponsive. An emergency squad arrived a short time later and administered Narcan to Appellant. EMTs administered several doses of Narcan before Appellant became alert.

{¶ 7} While the EMTs worked on Appellant, Officer Simmons spoke with Danielle. Danielle admitted she had snorted heroin. She indicated she had purchased the heroin at a BP gasoline station in Mansfield. At the time of the purchase, the heroin was in a small plastic bag. According to Officer Simmons, Danielle stated the drug had a different taste or effect. Danielle also told Officer Kunzen the heroin did not smell or taste right. Danielle was transported to the Ashland County Police Department, and later taken to the Ashland County Jail. Appellant was transported to the hospital.

{¶ 8} During a search of the trailer, officers found numerous items related to drug use, including syringes, syringe caps, a crack pipe, tubes or "stems" for a crack pipe, two metal spoons, white powder scraped into a line in the center of a glass tray, a marijuana pipe, razor blades, a shoe lace, cotton balls, and a syringe filled with a brown liquid.

{¶ 9} Diane Harpster, Jeffrey Sanders' mother, acknowledged her son had had trouble with the law and had an addiction problem. The last time Harpster saw Sanders was on August 7, 2016, but she had spoken with him between 5 and 6 p.m. the following day. On August 9, 2016, Harpster texted Sanders to inform him her boyfriend's mother was in the hospital. When she did not hear from Sanders, Harpster called his cell phones, left text messages on both phones, and messaged him through Facebook. Sanders did not respond to any of her communications, which worried Harpster. Harpster asked her daughter to check on Sanders because she could not leave work. Harpster's daughter went to Sanders' residence and found him dead. The Cuyahoga County Medical Examiner's Office ruled Sander's death was the result of acute intoxication of Carfentanil.

{¶ 10} Harpster testified Sanders lived at 1423 Cleveland Avenue, Lot # 11. Sanders did not have a driver's license and his only means of transportation was his bicycle. The bicycle was outside Sanders' trailer on the day his body was discovered. Harpster indicated Sanders had been clean for over 600 days and was proud of his sobriety. Harpster denied Sanders' use of intravenous drugs at any time.

3

{¶ 11} Krystal Campbell, Sanders' older sister, testified Harpster contacted her around lunchtime on August 9, 2016, and asked her to check on Sanders. Campbell agreed to check on her brother. Campbell and her boyfriend drove to Sanders' residence. Campbell knocked on the door of the trailer for several minutes. She tried the door and found it was unlocked. She poked her head into the trailer and called Sanders' name. She entered the trailer and began to search for Sanders, continuing to call her brother's name. Campbell eventually found Sanders in the bathroom, slumped over the bathtub. Sanders was unresponsive. Campbell's boyfriend called 9-1-1.

{¶ 12} Detective Brian Evans of the Ashland Police Department was dispatched to 1423 Cleveland Avenue, Lot # 11, on August 9, 2016, in response to a possible overdose. At the scene, Detective Evans spoke with members of Sanders' family, photographed the scene, and collected evidence. Detective Evans returned to the station at approximately 6 p.m. and learned of the overdose at Appellant's residence the prior evening. Detective Evans read the report of the incident and learned Appellant lived one block away from Sanders. He then searched Danielle's phone, which had been taken into evidence, and found a number of text messages and phone calls between Danielle and Sanders, all dated August 8, 2016. Thereafter, Detective Evans proceeded to the jail and questioned Danielle.

{¶ 13} Detective Evans testified Danielle told him she obtained the drugs from a dealer named "Yellow" in Mansfield earlier in the day on August 8, 2016. Detective Evans added Danielle said she snorted some of the drugs, but was afraid to use the remainder because the drugs seemed different. Detective Evans testified Danielle recalled Sanders came to the trailer and purchased the drugs which had been prepared for him when she returned from Mansfield. Detective Evans stated Danielle told him Sanders gave her a $20 bill, took the baggie of drugs, and left. Detective Evans added Danielle informed him she subsequently called Sanders and told him not to use all of the drugs because of her concern the drugs did not look right.

{¶ 14} Detective Evans spoke with Appellant after he was released from the hospital. Detective Evans testified Appellant stated he drove his roommate's boyfriend's car to Mansfield and purchased a half gram from a dealer named "Yellow" with money he received from his mother. In addition, Detective Evans noted Appellant indicated he injected some of the drugs when he returned from Mansfield and that was the last he remembered. Detective Evans added Appellant stated Sanders wanted to make a trade for some drugs, but ultimately came to the trailer with $20. Detective Evans further testified Appellant recalled

4

the drugs were on a tray and he packaged an amount less than $20 worth in a baggie for Sanders. The detective testified Appellant told him Sanders arrived at Appellant's trailer and left with the baggie of drugs.

{¶ 15} Audio recordings of Detective Evans' interviews with Danielle and Appellant were played for the jury.

{¶ 16} During her interview with Detective Evans, Danielle indicated Sanders came to the trailer after she and Appellant returned from Mansfield. Sanders gave her a $20 bill. A baggie of drugs was on a tray, ready for him. Sanders took the drugs and left. During his interview with Detective Evans Appellant stated he spoke with Sanders that day but was "not really sure" when Sanders "got his". Appellant was "pretty sure" Sanders "only got like a 20, if even a whole 20". Appellant thought Sanders had $20 on him. When asked about what Sanders' "stuff" was in, Appellant stated he thought he "had a package laid out with [Danielle's] on the tray." He added he "put it all back in" the baggie.

{¶ 17} Detective Evans played three short videos retrieved from the surveillance camera of Donna D's restaurant. The three videos were taken on August 8, 2016. Detective Evans acknowledged the timestamp on the video was inaccurate as the surveillance system was not set for Eastern Standard Time. The first video depicts Sanders, wearing a black shirt and dark jeans, riding his bicycle south past Donna D's. The second video shows Sanders turning east, traveling through the parking lot of the Family Dollar Store towards Appellant's trailer. The final video reveals Sanders biking in a northwest direction, heading away from Appellant's trailer and toward his own residence. Sanders was wearing the same clothing in the video as he was wearing when his body was found.

{¶ 18} On cross-examination, Detective Evans indicated Danielle informed him she and Appellant purchased something with the $20 Sanders gave them in exchange for the drugs. Detective Evans reiterated Appellant told him the drugs were on a tray and he had placed them in a baggie which he subsequently gave to Sanders.

{¶ 19} Dr. Dale Thomae, the Ashland County Coroner, testified the Cuyahoga County Coroner, Dr. Todd Barr, performed the autopsy. Dr. Barr noted Sanders was a healthy, twenty-one year old male. The toxicology testing revealed a fentanyl analog in Sander's blood. Blood and urine samples were sent to a lab in Indianapolis to identify the specific analog involved. Based upon the

5

Cuyahoga County Coroner's autopsy report, Dr. Thomae issued a narrative report and summary as well as a death certificate. The death certificate listed the cause of death as "sudden cardio path due to deep ventricular arrhythmia and due to acute intoxication by Carfentanil." Dr. Thomae stated the estimated time of death was between 1:30 and 4:30 a.m. on August 9, 2016. Dr. Thomae noted the Carfentanil was still in Sanders' system, indicating recent usage of the drug. Dr. Thomae explained an individual can overdose on a small amount of Carfentanil.

{¶ 20} Jennifer Acurio, a forensic scientist with the Bureau of Criminal Investigations, tested three items recovered from Appellant's residence: a residue, brown liquid found in a syringe, and a marijuana pipe. The testing revealed the residue and the brown liquid were Carfentanil. The marijuana pipe contained a substance determined to be marijuana.

{¶ 21} After hearing all the evidence and deliberating, the jury found Appellant guilty of Counts 1 – 8 of the Indictment. The trial court ordered a pre-sentence investigation. At sentencing, the trial court merged the involuntary manslaughter and corrupting another with drugs charges. The state elected to have Appellant sentenced on the involuntary manslaughter conviction. The trial court sentenced Appellant to an aggregate term of imprisonment of ten years, advising Appellant the ten year prison term for the involuntary manslaughter conviction was mandatory time.

*State v. Luce*, 2018-Ohio-4409, 2018 WL 5738535, at **1-4 (Ohio Ct. App. 2018).

## II.    Procedural History

### A.    Trial Court Proceedings

On March 9, 2017, the Ashland County Grand Jury indicted Luce on the following charges: one count of involuntary manslaughter in violation of O.R.C. § 2903.04(A) (Count 1); one count of corrupting another with drugs in violation of O.R.C. § 2925.02(A)(3) (Count 2); one count of aggravated trafficking in drugs in violation of O.R.C. § 2925.03(A)(1) (Count 3); one count of aggravated trafficking in drugs in violation of O.R.C. § 2925.03(A)(2) (Count 4); three counts of aggravated possession of drugs in violation of O.R.C. § 2925.11(A) (Counts 5, 9, and 11); two counts of possessing drug abuse

6

instruments in violation of O.R.C. § 2925.12(A) (Counts 6 and 10); one count of illegal use or possession of drug paraphernalia in violation of O.R.C. § 2925.14(C)(1) (Count 7); and one count of illegal use or possession of marihuana drug paraphernalia in violation of O.R.C. § 2925.141(C) (Count 8).  (Doc. No. 4-1, Ex. 1.)  Luce entered pleas of not guilty to all charges.  (Doc. No. 4-1, Ex. 2.)

On April 12, 2017, Luce filed a motion to sever Counts 9 through 11 from Counts 1 through 8 in the indictment.  (Doc. No. 4-1, Ex. 3.)  The state opposed Luce's motion to sever. (Doc. No. 4-1, Ex. 4.) On July 24, 2017, the trial court denied Luce's motion to sever. (Doc. No. 4-1, Ex. 5.)

On August 1, 2017, Luce withdrew his former not guilty plea and pled guilty to Counts 9 through 11.  (Doc. No. 4-1, Ex. 6.)  On August 4, 2017, the trial court accepted Luce's plea of guilty and delayed sentencing.  (Doc. No. 4-1, Ex. 7.)

The case proceeded to jury trial on August 1, 2017.  (Doc. No. 4-1, Ex. 8.)  On August 4, 2017, the jury returned its verdict, finding Luce guilty of all remaining counts.  (*Id.*)

On October 2, 2017, the trial court held a sentencing hearing.  (Doc. No. 4-1, Ex. 9.)  The trial court found Count Two merged with Count One, and the state elected for Luce to be sentenced on Count One (involuntary manslaughter).  (*Id.*)  The trial court sentenced Luce to a mandatory ten-year prison term on Count One.  (*Id.*)  The trial court sentenced Luce to additional prison terms on Counts Three through Seven and Nine through Eleven, all to be served concurrently to his mandatory sentence on Count One. (*Id.*)  The trial court fined Luce $100.00 on Count 8.  (*Id.*)

7

**B.     Direct Appeal**

On October 13, 2017, Luce, through counsel, filed a timely notice of appeal to the Fifth District Court of Appeals.  (Doc. No. 4-1, Ex. 10.)  In his appellate brief, he raised the following assignments of error:

I.      Appellant's convictions for involuntary manslaughter, corrupting another with drugs, and trafficking in drugs were not supported by the sufficiency of the evidence and are against the manifest weight of the evidence.

II.     Trial counsel was ineffective for failing to (1) request a jury instruction prohibiting the jury from using anything from the statements of Appellant's co-defendant against him, (2) object to the mischaracterization of testimony by the officer who interviewed Appellant, and (3) bring to the court's attention that a mandatory prison term was contrary to law on the involuntary manslaughter conviction.

III.    The trial court erred by failing to merge Appellant's aggravated trafficking in drugs conviction with the conviction for involuntary manslaughter and corrupting another with drugs.

IV.     Appellant's sentence must be reversed as contrary to law as nothing permitted imposition of a mandatory prison term on the involuntary manslaughter conviction.

(Doc. No. 4-1, Ex. 11.)  The State filed a brief in response (Doc. No. 4-1, Ex. 12), to which Luce replied. (Doc. No. 4-1, Ex. 13.)

On October 31, 2018, the state appellate court affirmed in part, vacated in part, and remanded the case back to the trial court for resentencing.  (Doc. No. 4-1, Ex. 14.)  *See also State v. Luce*, 2018 WL 5738535.

On February 4, 2019, Luce, proceeding *pro se*, filed a motion for leave to file a delayed appeal with the Ohio Supreme Court.  (Doc. No. 4-1, Ex. 15.)

8

On April 3, 2019, the Ohio Supreme Court denied Luce's motion for delayed appeal and dismissed the case.  (Doc. No. 4-1, Ex. 16.)

## C.   Resentencing

On December 27, 2018, the trial court resentenced Luce on Count One.  (Doc. No. 4-1, Ex. 17.) The court sentenced Luce to 10 years in prison for involuntary manslaughter on Count One.  (*Id.*)   The imposed sentences on Counts Three through Eleven were to run concurrent to the sentences imposed for Count One, for an aggregate prison term of ten years.  (*Id.*)

Luce, through counsel, filed a timely notice of appeal to the Fifth District Court of Appeals.  (Doc. No. 4-1, Ex. 18.)  In his brief, Luce raised the following assignments of error:

I.  The trial court erred to Christopher Luce's detriment when in the sentencing findings, it did not include factors under R.C. 2929.12, which were supported by the record, thereby the sentence was rendered contrary to law.

II.  The trial court erred to Christopher Luce's detriment when he was given a heavy inconsistent sentence while other sentences, with similar crimes were of shorter duration.

(Doc. No. 4-1, Ex. 19.)  The state filed a brief in response.  (Doc. No. 4-1, Ex. 20.)  On July 15, 2019, the state appellate court affirmed the trial court's decision.  (Doc. No. 4-1, Ex. 21.)

Luce did not appeal to the Ohio Supreme Court.  (Doc. No. 4-1.)

9

**D.**     **Federal Habeas Petition**

On February 28, 2020,[1] Luce filed a Petition for Writ of Habeas Corpus in this Court and asserted

the following grounds for relief:

> **GROUND ONE**:  Ineffective Assistance of Trial Counsel
>
> > **Supporting Facts**:  Trial counsel failed to object to the use of statements givin [sic] by Co-Defendant and Defendant to Police, and the use of faulty evidence proffered by the prosecution.
>
> **GROUND TWO**:  Violation of Due Process Protections
>
> > **Supporting Facts**:  Errors committed by both the State and Defense caused massive violations of Due Process protections.
>
> **GROUND THREE:**  Actual Innocence
>
> > **Supporting Facts**:  Because of the amount of time that lapsed where the deceased was unaccounted for there is no way to determine where he obtained the drugs that ultimately killed him.
>
> **GROUND FOUR:**  Right to Confrontation
>
> > **Supporting Facts**:  My right to confrontation and cross examination was violated when the State played recorded statements during trial with no ability for defense to cross examine the witnesses.

(Doc. No. 1.)

On June 26, 2020, Warden Lyneal Wainwright ("Respondent") filed the Return of Writ. (Doc. No.

4.)   Luce failed to file a Traverse, although he was given an extension of time to do so.  (Doc. No. 5;

Non-document Order dated July 28, 2020.)

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until March 16, 2020, Luce states that he placed it in the prison mailing system on February 28, 2020.  (Doc. No. 1 at 15.)  Thus, the Court will consider the Petition as filed on February 28, 2020.

### III. Exhaustion and Procedural Default

**A.     Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his

---

habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

13

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

**B.    Application to Petitioner**

Respondent argues Luce's first, second, and fourth grounds are procedurally defaulted.  (Doc. No. 4 at 9.)  With respect to Luce's first ground, Respondent argues it is procedurally defaulted because Luce failed to timely appeal to the Supreme Court of Ohio.  (*Id.*)  With respect to Luce's second and fourth grounds, Respondent argues that Luce failed to fairly present them to the state courts for review, and such claims are now barred by *res judicata*.  (*Id.*)  Respondent asserts Luce cannot show cause and prejudice or actual innocence to excuse the default.  (*Id.* at 15-18.)  As Luce failed to file a Traverse, Respondent's arguments are uncontroverted.

**1.  Ground One**

A careful review of the record reveals that while Luce raised this claim to the state appellate court, he failed to timely appeal the state appellate court's decision to the Supreme Court of Ohio.  (Doc. No. 4-1, Ex. 11, 15.)

Under its procedural rules, the Ohio Supreme Court has jurisdiction over timely appeals which are made within 45 days of the state appellate court's decision.  *See* Ohio S.Ct.Prac.R. 6.01(A)(1) &

14

7.01(A)(1). The Ohio Supreme Court may, in its discretion, take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. 7.01(A)(4). However, where (as here) the delayed appeal is not allowed, the Sixth Circuit Court of Appeals has held that even an unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar:

> This case turns upon whether the Ohio Supreme Court entry denying Bonilla's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of Bonilla's habeas corpus petition. Upon examination of the Ohio Supreme Court Rules, we conclude that it does. The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4) (c). **Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.**

*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (emphasis added); *accord Baker v. Bradshaw*, 495 F. App'x 560, 565 (6th Cir. 2012) ("The timeliness requirements for an appeal to the Ohio Supreme Court ... constitute adequate and independent state grounds to preclude hearing an untimely claim on the merits."); *Carman v. Ohio*, No. 1:14 CV 2060, 2015 WL 1189084 (N.D. Ohio Mar. 16, 2015); *Crutchfield v. Warden*, No. 1:13-cv-438, 2014 WL 3899287 (S.D. Ohio Aug. 11, 2014) (finding that where the petitioner's motion for delayed appeal before the Ohio Supreme Court was denied, the petitioner must demonstrate cause for his default and actual prejudice to avoid dismissal).

15

The Court finds Luce's failure to file a timely appeal from the October 31, 2018 state appellate court decision to the Ohio Supreme Court, coupled with the Supreme Court of Ohio's denial of a motion for delayed appeal, resulted in a procedural default.  Therefore, Ground One is procedurally barred unless Luce "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

### a.  Cause and Prejudice

As Luce failed to file a Traverse, he did not raise any arguments regarding cause and prejudice to excuse the procedural default.  However, the Court addresses any arguments Luce may have raised with respect to ineffective assistance of counsel.

In his motion for leave to file delayed appeal, Luce admits he received the state appellate court's decision on October 31, 2018 but did not file his appeal until February 4, 2019.  (Doc. No. 4-1, Ex. 15.)  Although he claims as one ground for delayed appeal that he was waiting on his appellate attorney to provide him with information, he fails to explain what the information was considering he admitted to receiving the state appellate court's decision on October 31, 2018.  (*Id.*)  However, Luce failed to exhaust any ineffective appellate counsel grounds in a Rule 26(B) application.  *Terry v. Jackson*, No. 16-4330, 2017 WL 5664915, at *2 (6th Cir. July 17, 2017).  State law will no longer allow him to pursue these claims.  *See id.*  "Because [Luce] is well outside the ninety-day window of Rule 26(B), that claim is itself

16

procedurally defaulted, *see Coleman*, 501 U.S. at 735 n.1, and cannot serve as cause to excuse [his] original procedural default.  *See Carpenter*, 529 U.S. at 453."  *Id.*

As additional grounds for delayed appeal, Luce asserts that as he was *pro se*, he had to learn the rules of the court, and he was restricted in his access to both the law library and the mail.  (Doc. No. 4-1, Ex. 15.)  A petitioner's *pro se* status or lack of legal training is insufficient to establish cause to excuse the procedural default of his ineffective assistance of counsel claims.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  Likewise, restrictions on access to the law library and the mail are insufficient to constitute cause to excuse the default.  *Id.*

As Luce fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

### b.  Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623.  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is

17

not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id*. at 316.

While Luce asserts a claim of actual innocence, he fails to present any new, reliable evidence of his innocence.  (Doc. No. 1.)  Therefore, the Court finds Luce has failed to demonstrate the procedural default of Ground One should be excused on the basis of actual innocence.

### 2.  Grounds Two and Four

In Ground Two, Luce asserts his due process protections were violated by "[e]rrors committed by both the State and Defense . . . ."  (Doc. No. 1 at 7.)  In Ground Four, Luce argues his rights to confrontation and cross-examination were violated "when the State played recorded statements during trial with no ability for defense to cross examine the witnesses."  (*Id*. at 10.)  Respondent argues these record-based claims should have been presented on direct appeal and are now barred by *res judicata*. (Doc. No. 4 at 12-15.)

A careful review of the record reveals that Luce failed to raise any due process claim to the state courts on direct appeal.  (Doc. No. 4-1, Ex. 11, 15.)  While Luce raised an ineffective assistance of trial counsel claim on direct appeal that involved a Confrontation Clause issue (*id*.), Luce did not raise an independent Confrontation Clause claim to the state courts and the ineffective assistance claim cannot preserve the underlying claim.  *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct.") In addition, the Sixth Circuit has held "'that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.'" *Williams v.*

18

*Bagley*, 380 F.3d 932, 969 (6th Cir. 2004) (quoting *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998)). Relatedness of the issues between a claim presented to the state courts and one not presented to the state courts will not save the unpresented claim.  *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001).

The Court finds Luce's failure to raise his due process and Confrontation Clause claims on direct appeal resulted in a procedural default.  Therefore, Grounds Two and Four are procedurally barred unless Luce "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

### a.  Cause and Prejudice

As Luce failed to file a Traverse, he did not raise any arguments regarding cause and prejudice to excuse the procedural default.  However, the Court addresses any arguments Luce may have raised with respect to ineffective assistance of counsel.

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Corr. Facility*, 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016).  However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default.  *See Edwards v.*

19

*Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

Luce failed to exhaust any ineffective appellate counsel grounds in a Rule 26(B) application. *Terry v. Jackson*, No. 16-4330, 2017 WL 5664915, at *2 (6th Cir. July 17, 2017).  State law will no longer allow him to pursue these claims.  *See id.*  "Because [Luce] is well outside the ninety-day window of Rule 26(B), that claim is itself procedurally defaulted, *see Coleman*, 501 U.S. at 735 n.1, and cannot serve as cause to excuse [his] original procedural default.  *See Carpenter*, 529 U.S. at 453."  *Id.*

As Luce fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

### b.  Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623.  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is

20

not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316.

While Luce asserts a claim of actual innocence, he fails to present any new, reliable evidence of his innocence.  (Doc. No. 1.)  Therefore, the Court finds Luce has failed to demonstrate the procedural default of Grounds Two and Four should be excused on the basis of actual innocence.

### IV. Non-Cognizable Claim

In Ground Three, Luce asserts a free-standing claim of actual innocence.  (Doc. No. 1 at 8.) Respondent asserts that the United States Supreme Court has not recognized a free-standing claim of actual innocence, and so this claim is not cognizable on federal habeas review.  (Doc. No. 4 at 9.)

The Sixth Circuit repeatedly has held that actual innocence is not cognizable as a free-standing habeas claim, particularly in the context of non-capital proceedings.  *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007).  *See also Thomas v. Perry*, 553 F. App'x 485, 486 (6th Cir. 2014) ("Thomas' freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review"); *Sitto v. Lafler*, 279 F. App'x 381, 382 (6th Cir. 2008) ("[W]e continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review"); *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent."); *Hoop v. Jackson*, No. 1:06-cv-603, 2015 WL 6735895, at *22 (S.D. Ohio Nov. 4, 2015) ("Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim."); *Carter v. Bradshaw*, No. 3:02CV524, 2015 WL 5752139, at *51 (N.D. Ohio Sept. 30, 2015);

*Keenan v. Bagley*, No. 1:01 CV 2139, 2012 WL 1424751, at *48 n.28 (N.D. Ohio April 24, 2012); *Johnson v. Kelly*, No. 1:13 CV 1381, 2015 WL 1298711, at *11 (N.D. Ohio March 23, 2015) (adopting report and recommendation).  Therefore, any freestanding actual innocence claim Luce asserts is non-cognizable on federal habeas review.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.


Date: August 10, 2022                                   *s/ Jonathan Greenberg*
                                                        Jonathan D. Greenberg
                                                        United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**